[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 18, 2009
THOMAS K. KAHN
CLERK

No. 08-14077
Non-Argument Calendar
_____

D. C. Docket No. 08-00004-CR-01-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALDO ARNALDO GUZMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(February 18, 2009)**

Before BLACK, BARKETT and FAY, Circuit Judges.

PER CURIAM:

Aldo Arnaldo Guzman appeals the district court's imposition of a special condition of supervised release, requiring him to inform the probation officer in writing of his address in Mexico within 72 hours of his deportation from the United States. For the reasons set forth below, we affirm.

**I.**

A federal grand jury returned a single-count indictment against Guzman, charging him with being an alien found within the United States without authorization after having been previously deported and removed from the country, in violation of 8 U.S.C. § 1326(a) and (b)(2). At the plea hearing, the government proffered that, on January 23, 2008, agents from Immigration and Customs Enforcement ("ICE") encountered Guzman in a jail in Hall County, Georgia, and asked whether he was legally present in the United States. Guzman responded that he was not legally present, and he provided a sworn statement to the agents admitting that he was a Mexican national who had re-entered the country without permission after having been previously deported. Guzman pled guilty to the lone count in the indictment.

The probation officer prepared a presentence investigation report ("PSI"), in which he set out Guzman's offense conduct as follows: In January 2008, local law enforcement in Hall County, Georgia, contacted Special Agent David Silka of ICE

2

and informed him that Guzman had been detained for questioning regarding his immigration status. Silka then reviewed Guzman's immigration file and discovered that, on May 17, 2007, Silka and members of the Hall County Gang Task Force encountered Guzman in his residence in Georgia "following a state and federal operation to locate and apprehend subjects who were illegally in the United States." At that time, Guzman informed Silka that he had crossed the border into the United States from Mexico at a "very early age." Guzman was deported to Mexico in July 2007. Silka interviewed Guzman on January 23, 2008, at which time Guzman admitted that, three weeks earlier, he had paid a smuggler $2,000 to help him enter the United States.

The probation officer explained that Guzman's parents were permanent residents in the United States at the time of his birth but, for an unknown reason, his mother returned to Mexico to give birth to Guzman. When Guzman was two or three years old, his father returned to the United States and "smuggled" Guzman into the country. Guzman had no relatives or friends in Mexico, as Guzman's parents, 3 siblings, girlfriend of 6 years, and 20-month old child all lived in Georgia.

At the sentencing hearing, the parties confirmed that they had no objections to the PSI, and, therefore, the district court adopted its findings of fact and

guideline calculations. The court adjudicated Guzman guilty of the offense in the indictment, sentenced him to six months' imprisonment, and waived the fine. The court also imposed a term of supervised release of one year, to begin upon Guzman's release from custody. The court included the following conditions of supervision:

> Within 72 hours of release from the custody of the Bureau of Prisons the defendant shall report in person to the probation office in the district to which the defendant is released.
>
> If deported, then the defendant shall report within 72 hours of deportation to the United States Probation Office in the Northern District of Georgia in writing his current address.

After the court emphasized Guzman's youth, cautioned him about returning to the United States, and instructed him to make a good life for himself in Mexico, the court asked if the parties had any objections to the sentence. At that point, the following exchange took place:

> DEFENSE COUNSEL: Your Honor, I have no objections to the sentence other than the reporting within 72 hours in writing from Mexico. I think that's a condition of supervised release that he cannot fulfill. When he's taken from the jail they don't let him take any papers with him, he's put on a bus or a plane to Mexico, he is not taken home. He is dropped off.
>
> COURT: They don't have pencil and paper in Mexico?

4

DEFENSE COUNSEL:   Well, you have to have resources to buy it, your Honor, and you have to know where to send the address and I would submit that's beyond the court's jurisdiction to impose.

COURT:   In my opinion that's an absurd objection. Probation is meaningless if he's not required to report where he is living, and if the Court of Appeals wants to say that's an illegal condition, then I certainly will abide by it, but that's absolutely absurd. And I – you have a right to appeal that sentence if you wish to do so.

Guzman appealed from the court's judgment of conviction.

## II.

"We review the district court's imposition of a special condition of supervised release for abuse of discretion, so long as the objection was preserved for appeal." United States v. Taylor, 338 F.3d 1280, 1283 (11th Cir. 2003). With respect to the district court's authority to impose special conditions of supervised release, 18 U.S.C. § 3583(d) provides in pertinent part:

The court may order, as a further condition of supervised release, to the extent that such condition –

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate . . . .

18 U.S.C. § 3583(d); see also U.S.S.G. § 5D1.3(b); United States v. Okoko, 365 F.3d 962, 965 n.5 (11th Cir. 2004) ("Because . . . § 5D1.3 mirrors the language used in this statute, we consider it together with 18 U.S.C. § 3583(d) in reviewing the district court's imposition of a special condition on a supervised release.").

### III.

Thus, the district court was authorized to impose its reporting requirement under this "catchall" provision in § 3583(d) so long as the requirement satisfied the above statutory criteria. See United States v. Zinn, 321 F.3d 1084, 1089 (11th Cir. 2003) (recognizing that, under § 3583(d), the "district court may impose any condition of supervised release it deems appropriate so long as it comports with the factors enumerated in § 3553(a)"). In this respect, not only did the district court apparently consider its reporting requirement to be "appropriate," but this requirement is also encompassed by two discretionary conditions of probation in 18 U.S.C. § 3563(b). See 18 U.S.C. § 3563(b)(15) (authorizing the court to require the defendant to "report to a probation officer as directed by the court or the probation officer"); id. § 3563(b)(17) (authorizing the court to require the

6

defendant to "notify the probation officer promptly of any change in address or employment").

Guzman contends that the court did not satisfy the first statutory criterion in § 3583(d) because its reporting requirement was not reasonably related to the applicable § 3553(a) factors. The applicable § 3553(a) factors that the court must consider are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

. . .

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D); see 18 U.S.C. § 3583(d)(1). We have recognized that "the special condition imposed need not be related to each factor listed . . . to avoid a determination that the court abused its discretion." United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000). "Instead, each factor is an independent consideration to be weighed." Id.

Specifically, Guzman contends that, because the government would be

aware of Guzman's deportation, the court's reporting requirement had no practical purpose and was not reasonably related to any of the above § 3553(a) factors. The reporting requirement, however, was not imposed to confirm that Guzman was in fact deported, but was rather designed to ensure that he remained in Mexico. The reporting requirement reasonably seeks to accomplish this objective by discouraging Guzman from immediately re-entering the United States, and, more importantly, by allowing the probation officer to monitor his location. Ensuring that Guzman remained in Mexico was strongly related to his unlawful re-entry offense, was specifically designed to deter him from unlawfully re-entering again, and, in this respect, would help protect the public from any future attempt by Guzman to unlawfully re-enter the country. See 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(C). Thus, because the court's reporting requirement was reasonably related to several of the applicable § 3553(a) factors, it satisfied § 3583(d)(1). See Bull, 214 F.3d at 1278.

Guzman also argues, as he did at sentencing, that it would be "practically impossible" for him to satisfy the reporting requirement in light of the lack of financial resources and family support available upon his arrival in Mexico. Although he does not phrase it as such, this argument presumably relates to § 3583(d)(2), providing that the court's condition of supervision must not involve a

8

deprivation of liberty greater than reasonably necessary. 18 U.S.C. § 3583(d)(2).

In this case, there is nothing in the record to support Guzman's assertion that he would be financially incapable of informing the probation officer in writing of his address in Mexico within 72 hours of his deportation. Thus, the district court did not abuse its discretion on this point. See Taylor, 338 F.3d at 1283 ("We will reverse [for abuse of discretion] only if we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached.") (quotation and alteration omitted).

With respect to the third statutory criterion, Guzman does not argue that the court's reporting requirement is inconsistent with any policy statement issued by the Sentencing Commission and, therefore, he has abandoned any such contention. United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998) (stating that arguments not raised on appeal are abandoned).

In sum, the district court was authorized under § 3583(d) to impose its reporting requirement,[1] and, because this requirement satisfied the three statutory criteria, the court did not abuse its discretion in doing so. Accordingly, we affirm.

**AFFIRMED.**

---

[1] We reject Guzman's remaining two arguments challenging the court's authority under § 3583(d). First, Guzman's reliance on the canon of statutory construction known as expressio unius est exclusio alterius is without merit because the specific reference to deportation in § 3583(d) did not, by negative implication, preclude the court from imposing the reporting requirement under § 3583(d)'s catchall provision. Second, Guzman's reliance on our decision in Okoko – holding that the district court may not toll a period of supervised release while a defendant is lawfully outside the United States – is without merit because the court's condition took effect upon Guzman's arrival in Mexico. See 365 F.3d at 964-67.